1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   PATRICIA LYNN SMITH and RASHID          No.  2:24-cv-2268-DC-SCR
     DESHAWN DEARY-SMITH,
12
                Plaintiffs,
13                                            FINDINGS AND RECOMMENDATIONS
           v.
14
     CITY OF SACRAMENTO, COUNTY OF
15   SACRAMENTO, SCOTT JONES, et al.,

16              Defendants.

17

18         Plaintiff Patricia Lynn Smith ("Smith") and Rashid Deshawn Deary-Smith ("Deary-

19   Smith") proceed pro se in this action, which was referred to the undersigned in accordance with

20   Local Rule 302(c)(21) and 28 U.S.C. § 636(b)(1).  Plaintiffs allege violations of their

21   constitutional rights stemming from Deary-Smith's arrests and prosecutions and from other

22   actions taken by Sacramento County officials.  Pending before the undersigned are motions to

23   dismiss filed by (1) Defendant City of Sacramento ("City") (ECF No. 21); (2) Defendants County

24   of Sacramento ("County"), Deputy Scott Jones, Detective Elaine Stoops, Noah Louis Phillips,

25   Kelly Michael Jobe, Nicholas Bo Johnson, Anne Marie Schubert, Janice Hansen Scully, Jesse R.

26   Saucedo, District Attorney's Office, and Sacramento County Sheriff Department (collectively

27   "County Defendants") (ECF Nos. 22, 24); (3) Defendant California Department of Corrections

28   ("CDCR") (ECF No. 26); and (4) Defendants Judge Michael Allen Savage and Alicia Derrico

                                              1

1    (ECF No. 28).  For the reasons stated below, this action should be dismissed against all

2    Defendants without leave to amend.

3                    **BACKGROUND AND PROCEDURAL HISTORY**

4    **I.      Deary-Smith's Conviction**

5           The Court begins by recounting the procedural history of the prosecution—stemming

6    from a 2011 home invasion—that forms the crux of Deary-Smith's complaints, as drawn from

7    judicially noticed documents.[1]  On November 23, 2015, Deary-Smith was found guilty of

8    attempted murder, first degree burglary under California Penal Code § 459,[2] and two counts of

9    attempted first degree robbery, all with firearm enhancements.  *People v. Deary-Smith*, 11F04334

10   (Cal. Sup. Ct. Filed Jun. 29, 2011) ("*Deary-Smith I*"); ECF No. 22-3 at 5, 41.  He was also found

11   guilty of possession of a firearm as a convicted felon under former Penal Code § 12021(a)(1)

12   (2011).  *Id.* at 7.  Deary-Smith was sentenced to 21 years and eight months imprisonment,

13   including an eight-month sentence based on the revocation of Deary-Smith's existing probation

14   from Case No. 09F02047, a burglary conviction.  *Id.* at 7-8, 23.

15   _____

16   [1]  A court may judicially notice facts when they are "not subject to reasonable dispute because",
     *inter alia*, they "can be accurately and readily determined from sources whose accuracy cannot

17   reasonably be questioned." Fed. R. Evid. 201(b)(2).  The court may take such judicial notice
     either on its own or upon request to do so by a party that supplies the court with sufficient

18   information. Fed. R. Evid. 201(c)(1)-(2).

19   The County Defendants request judicial notice of (1) the California Third Appellate District's
     opinion in *People v. Deary-Smith*, C080821 (Cal. Ct. App. Apr. 3, 2019) ("*Deary-Smith III*")

20   (ECF No. 22-3 at 5-19); (2) the California Third Appellate District's opinion in *People v. Deary-
     Smith*, C090444 (Cal. Ct. App. Jul. 24, 2020) ("*Deary-Smith IV*") (ECF No. 22-3 at 21-25); (3)

21   the California Third Appellate District's opinion in *People v. Deary-Smith*, C093753 (Cal. Ct.
     App. Jun. 9, 2022) ("*Deary-Smith VI*") (ECF No. 22-3 at 27-37); (4) a printout of the Sacramento

22   Superior Court's docket filings in *People v. Deary-Smith*, 11F04334 (Cal. Sup. Ct. Filed Jun. 29,
     2011) ("*Deary-Smith I*") (ECF No. 22-3 at 39-45); (5) a printout of the Sacramento Superior

23   Court's docket filings in *People v. Deary-Smith*, 21HC00107 (Cal. Sup. Ct. Filed Feb. 19, 2021)
     ("*Deary-Smith V*") (ECF No. 22-3 at 47-48); and (6) a printout of the Sacramento Superior

24   Court's docket filings in *People v. Deary-Smith*, 19HC00229 (Cal. Sup. Ct. Filed Mar. 18, 2019)
     ("*Deary-Smith II*") (ECF No. 22-3 at 50).  Plaintiffs do not object, and the requests are granted.

25   The Court also *sua sponte* judicially notices a Status Report, dated September 29, 2023, filed in
     *Deary-Smith v. Bonta*, Case No. 2:20-cv-00572-KJM-AC, and attachments thereto (ECF No.

26   38)).

27

28   [2]  ll references to the "Penal Code" are to the California Penal Code.

                                    2

In April 2019, the California Court of Appeal reversed the attempted robbery convictions because the prosecution had failed to demonstrate Deary-Smith had a specific intent to steal. *People v. Deary-Smith*, C080821 (Cal. Ct. App. Apr. 3, 2019) ("*Deary-Smith III*"); ECF No. 22-3 at 5, 8.  It also remanded the case for the Superior Court to decide whether it would apply the firearm enhancement to the attempted murder and first-degree burglary convictions, an enhancement that was no longer mandatory due to a recent Penal Code amendment.  *Id.* at 16-17. The Court of Appeal also ordered a recalculation of the sentence for the firearm possession and probation revocation.  *Id.* at 18.

Upon remand, the trial court declined to strike the firearm enhancements for the remaining convictions.  *Id.* at 23.  It sentenced Deary-Smith to 9 years for attempted murder, 10 consecutive years for the firearm enhancement thereto, 16 consecutive months for burglary, and another 16 consecutive months for the firearm enhancement thereto, for a total of 21 years and eight months. *Id.*  It also imposed a stayed 16-month sentence for both the burglary conviction under Case No. 09F02047 and possession of a firearm as a convicted felon.  *Id.*  The Court of Appeal upheld this sentence.  *Id.* at 24-25 (*People v. Deary-Smith*, C090444 at 4-5 (Cal. Ct. App. Jul. 24, 2020) ("*Deary-Smith IV*")).

That was not the end of the procedural story for Deary-Smith's conviction.  Becoming effective in January 2019, California Senate Bill ("SB") 1437 reformed state law standards for felony murder under the natural and probable consequences doctrine.  SB 1437 also authorized those previously convicted of felony murder under the natural and probable consequences doctrine, but who would not be convicted under the new standards, to petition a state court to vacate their sentence.  ECF No. 22-3 at 32.  Deary-Smith filed such a petition in 2020, but the trial court denied it based on the belief that SB 1437 did not apply to attempted murder.  *Id.* at 27-28.  In January 2022, after Deary-Smith appealed the denial, SB 775 clarified that those convicted of attempted murder based on felony murder theories were entitled to the same relief under SB 1437 as those convicted of murder.  *Id.* at 32-33.

In June 2022, the Court of Appeal held that Deary-Smith had made the required prima facie showing in his petition for relief.  *Id.* at 33-36.  The appellate court reversed the denial of

1    Deary-Smith's petition and remanded for further proceedings.  *Id.* at 33, 37.

2          Pursuant to the appellate court's order, the trial court resentenced Deary-Smith on

3    September 1, 2023, *id*. at 39, vacating the conviction for attempted murder and the firearm

4    enhancement thereto, Status Report at 1-3, *Deary-Smith v. Bonta*, Case No. 2:20-cv-00572-KJM-

5    AC (Sep. 29, 2023) (ECF Nos. 38, 38-1 at 1).  Based on his conviction for burglary under Penal

6    Code § 459 and an enhancement thereto, Deary-Smith was resentenced to a total of eight years.

7    *Id.* at 2-3.  The court also upheld the stayed 16-month sentence for possession of a firearm as a

8    convicted felon.  *Id.* at 3.  Because Deary-Smith had by then been imprisoned for about a decade,

9    he was released on September 8, 2023.  *Id.* at 2-3; ECF No. 10 at 237.[3]

10   **II.    Allegations in the First Amended Complaint**

11         1.   Background

12         Defendants Phillips, Scully, Schubert, Saucedo, Johnson, and Jobe (collectively "D.A.

13   Defendants") are all County prosecutors.  ECF No. 10 at 22.  Defendants Jones and Stoops are

14   officers with the Sacramento County Sheriff's Office.  *Id.* at 22.

15         The FAC alleges that Defendant Phillips, an Assistant District Attorney for the County's

16   Homicide Department, was known for prejudice against African Americans in Del Paso Heights.

17   *Id.* at 9-10.  He had a reputation for falsely and illegally arresting young innocent individuals

18   from that community, in part by targeting formerly arrested individuals and their children.  *Id.* at

19   3, 9-10.

20         Defendants Phillips and Schubert were also strong supporters of "Law Enforcement

21   Accountability," an organization that worked with inmates and parolees in Plaintiffs' area.  *Id.* at

22   4-5.  The FAC alleges that Phillips and Schubert conspired with another County Homicide

23   District Attorney, Defendant Scully, to hide that one of the cofounders of the organization had

24   served twenty years for rape, kidnap, and torture.  *Id.* at 7.  Smith, Deary-Smith's mother, had

25   helped save the victim's life, and both Plaintiffs vocally opposed this cofounder.  *Id.*  The FAC

26

27   ───────────────
     [3]  During Mr. Smith's incarceration, he filed two habeas petitions, both of which were denied.
28   ECF No. 22-3 at 47-48, 50.  Except as specified in this order, the reasons for the denials are
     irrelevant to this action.

1    alleges that the cofounder colluded with Phillips to target anyone who disagreed with him,

2    including Plaintiffs. *Id.*

3        2. Prosecution History

4        The FAC alleges that Phillips first attempted to prosecute Deary-Smith for two second-

5    degree felony charges, but both charges were dismissed in December 2009. *Id.* at 9. In 2011,

6    Phillips both reopened this case and created a new case, Case No. 09F02047. *Id.* at 3. Phillips

7    then used the case to have Deary-Smith arrested and extradited while he was visiting family in

8    Harris County, Texas, in January 2013. *Id.* at 3, 10.

9        When Deary-Smith was booked the following month, the Sacramento County Sheriff's

10   Department listed two different social security numbers and the wrong X-Reference Number. *Id.*

11   at 93. The FAC alleges that Phillips deliberately had the X-Reference Number changed so the

12   corresponding DNA would match with the DNA found at the crime scene, because Phillips knew

13   that Deary-Smith's own DNA did not. *Id.* at 10-11, 31-32, 92-93. Defendant Stoops later

14   testified that Deary-Smith's DNA matched DNA found as the crime scene. *Id.* at 4.

15       This X-Reference Number also falsely showed that Deary-Smith had been convicted of

16   raping a disabled teen at age 17 and sentenced to life as a result. *Id.* at 11. Separately, another

17   individual with the surname "Dreary Smith" was placed on probation at age 19 for receipt of

18   stolen property. *Id.* The FAC alleges that Phillips used documents from these purported

19   proceedings and incarcerations against Deary-Smith, despite him never being convicted, paroled,

20   or incarcerated before. *Id.*

21       The FAC alleges that after Deary-Smith's first court appearance on February 13, 2013,

22   Derrico, Judge Savage's clerk, split the case across two hearing dates. *Id.* at 13-14, 101-102.

23   One hearing date was listed as having occurred in June 2011, while Derrico eventually dismissed

24   the other. *Id.* at 13-14, 101-102.

25       On October 17, 2013, the County District Attorney's Office filed an Amended Complaint

26   in *Dreary-Smith I*, alleging first-degree robbery of Antonia Branch, first-degree robbery of

27   Martez Laster, attempted murder of Mr. Laster, first-degree residential burglary, and unlawful

28   possession of a firearm as a convicted felon. *Id.* at 64-66. On January 15, 2015, Judge Sueyoshi

1  signed a Holding Order that said Deary-Smith had committed the offenses in the Amended

2  Complaint, now "Deemed Information." *Id.* at 67.  Under "Exceptions," however, Judge

3  Sueyoshi wrote "prosec. dismissed…Page 2 Lines 19-23….". *Id.* at 67.  Accordingly, paragraphs

4  regarding enhancements to all five counts were stricken from the Amended Complaint. *Id.* at 65-

5  66.

6          Based on this Holding Order, the FAC alleges that the charges in *Deary-Smith I* were

7  vacated, yet Defendant Phillips found other ways to keep Deary-Smith incarcerated. *Id.* at 8.  It

8  alleges that Phillips continued to prosecute the case, ignoring Judge Sueyoshi's Holding Order.

9  *Id.* at 8.

10         The FAC further alleges that when trial did occur in November 2015, Phillips relied on

11 false information that he asserted the parties had agreed to via stipulation. *Id.* at 14, 103-108.

12 Phillips used an Arrest Number that did not match the case number. *Id.* at 14, 110-111.  He

13 knowingly used the dismissed claims from Case No. 09F0347, now revived as Case No.

14 09F02047, to falsely assert Deary-Smith had violated probation. *Id.* at 14-15, 121-22, 124-126.

15 He also secretly paid Deary-Smith's attorneys, Stratton Barbee and George Jones, to stop

16 providing adequate counsel. *Id.* at 9.

17         The FAC alleges that one of the false accusations against Deary-Smith involved the

18 purported murder of Branch. *Id.* at 6.  Detective Stoops, who wrote the initial homicide report,

19 testified that Deary-Smith was the suspect and that his DNA was a positive match to DNA found

20 at the scene. *Id.* at 6, 75.  Branch was in fact alive and testified to that effect at trial. *Id.*

21         The FAC alleges that Phillips and Judge Savage used jury forms submitted without the

22 jury foreman's signature to convict Deary-Smith. *Id.* at 8, 170-174.  The FAC further alleges that

23 at the sentencing hearing, Judge Savage asserted that Deary-Smith had previous convictions. *Id.*

24 at 14, 108-109.  He relied on the allegations from Case No. 09F0347, despite knowing that the

25 case had in fact been dismissed. *Id.* at 14, 162.  Defendants effectively used two different case

26 numbers and two arrest numbers to sentence Deary-Smith twice for the same crime. *Id.* at 15,

27 103-104.

28 ////

6

1   3. Post-Conviction

2    The FAC alleges that after Deary-Smith's conviction, Phillips changed the Felony

3 Abstract of Judgments to show that one of the convictions was for a violation of Penal Code §

4 459, first-degree residential burglary.  ECF No. 10 at 8, 179.  The FAC further alleges that the

5 original charge was under Penal Code § 496, which prohibits knowingly purchasing or selling

6 stolen property or otherwise aiding and abetting the withholding of such property from its rightful

7 owner.  *Id.* at 8, 55.  This made Deary-Smith look more dangerous than he was.  *Id.* at 8.

8    Deary-Smith served a total of ten years and eight months across three prisons.  *Id.* at 17,

9 201.  Various documents that should have been in his file during that time were purportedly

10 missing.  *Id.* at 17, 202-205.  The FAC alleges that Phillips had Deary-Smith falsely classified as

11 a sex offender in all three prisons, which led to his attempted murder while incarcerated.  *Id.* at

12 17, 26.  A "Classification Committee" report from February 2016, for example, said Deary-Smith

13 was arrested for "Rape of Mentally/Physically Disabled" under Penal Code § 261(a)(1).  *Id.* at

14 203.

15    On February 6, 2024, after his release, Deary-Smith filed a claim against the County,

16 seeking $13 million in damages and to vacate his convictions or have them pardoned.  *Id.* at 234,

17 237.  He filed a similar claim with the Sacramento County Sheriff's Department three days later.

18 *Id.* at 244.

19   4. Causes of Action and Requested Relief

20    The FAC organizes all its claims into four groups.[4]  It first alleges Violations of Rights,

21 Unlawful Detention, and False Imprisonment based on Deary-Smith's arrest and detention

22 without valid warrant or probable cause.  *Id.* at 23-24.  The FAC alleges that Defendants both

23 lacked "real evidence" and ignored exculpatory evidence, like the fact that Deary-Smith's DNA

24 did not match DNA found at the crime scene.  *Id.* at 24-25.

25    The second group of claims includes Retaliation, Excessive Force, Libel & Slander,

26 Malicious Prosecution, and Assault.  *Id.* at 25.  While acting under the color of state law,

27 ———————————

28 [4]  Despite the FAC's cover page listing perjury as a cause of action (ECF No. 10 at 1), the causes of action in the FAC itself do not include this claim (*Id.* at 23-27).

1    Defendants retaliated against Deary-Smith for his verbal disagreement as to interpretations of law

2    and fact, including whether he had the right to know why he was arrested and whether he could

3    be sentenced four times for the same crime. *Id.*

4         The third group of claims includes Intentional Infliction of Emotional Distress ("IIED"),

5    Sexual Defamation of Character, Obstruction of Justice, and Fraud. *Id.* at 26. The FAC alleges

6    that Deary-Smith had a bag over his head while extradited from Texas to California. *Id.* Once

7    convicted, Smith was falsely classified as a sex offender and placed in the general population,

8    which could have cost him his life. *Id.*

9         Finally, the FAC alleges Failure to Supervise and Failure to Properly Train based on

10   Defendants' deliberate choice to ignore the false contents of every document they used to arrest,

11   convict, and imprison Deary-Smith. *Id.* at 27. Phillips in particular abused his power as a District

12   Attorney to unlawfully tell the judges what to do and say. *Id.*

13        Based on these allegations, Plaintiffs seek changes in policies and procedures "with

14   respect to properly identify when appearing in court more than one time charged with any

15   crimes." *Id.* at 28. Aside from this, they seek compensatory and punitive damages, prejudgment

16   interest thereon, declaratory and injunctive relief thereon, and attorney's fees and costs. *Id.*

17   **III.    Procedural History of this Action**

18        Plaintiffs initiated this action on August 21, 2024, and filed the FAC on January 14, 2025.

19   ECF Nos. 1, 10. The City filed its original motion to dismiss before Judge Coggins on February

20   26, 2025, before being directed to file it before the undersigned, which it did on February 27,

21   2025. ECF Nos. 19-21. County Defendants filed their motion to dismiss on February 28, 2025.

22   ECF No. 22. Defendant CDCR and Defendants Derrico and Judge Savage filed their motions to

23   dismiss on March 6 and 11, 2025, respectively. ECF Nos. 26, 28. Plaintiffs filed timely

24   opposition briefs,[5] ECF Nos. 47-48, 54-57, and defendants filed timely reply briefs, ECF Nos. 52,

25

26

27   [5] Plaintiffs sometimes filed separate but nearly identical opposition briefs to the same motion to dismiss. *Compare* ECF No. 55 *with* ECF No. 57. The Court below will cite only one of Plaintiffs' briefs unless any difference between the briefs is noteworthy.

28

1   53, 58, 61.[6]  The undersigned heard all four motions on June 5, 2025.  ECF No. 66.

2                                    **LEGAL STANDARD**

3          A defendant may move to dismiss a claim under Rule 12(b)(1) if the court lacks subject-

4   matter jurisdiction.  "Federal courts are courts of limited jurisdiction" and can only try cases they

5   are authorized to by Constitution and statute.  *Kokkonen v. Guardian Life Ins. Co. of America*,

6   511 U.S. 375, 377 (1994).  It is consequently presumed that a plaintiff's cause of action lies

7   outside of the limited jurisdiction, and the plaintiff has the burden of showing otherwise when

8   challenged.  *Id.*

9          Alternatively, a defendant may move to dismiss a claim under Rule 12(b)(6) if the

10  allegation "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To

11  survive, the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to

12  'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

13  (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

14         A claim is facially plausible "when the plaintiff pleads factual content that allows the

15  court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

16  *Iqbal*, 556 U.S. at 678.  This standard is a "context-specific task that requires the reviewing court

17  to draw on its judicial experience and common sense," *Iqbal*, 556 U.S. at 679, and to "draw all

18  reasonable inferences in favor of the nonmoving party."  *Boquist v. Courtney*, 32 F.4th 764, 773

19  (9th Cir. 2022) (quoting *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d

20  938, 945 (9th Cir. 2014) (internal quotation marks omitted).  Stating a claim "requires more than

21  labels and conclusions, and a formulaic recitation of the elements."  *Twombly*, 550 U.S. at 555.

22  The factual allegations must be sufficient to "raise a right to relief above the speculative level"

23  and "raise a reasonable expectation that discovery will reveal evidence" needed to support the

24  claim.  *Id*. at 556.

25  _____

26  [6]  Plaintiffs subsequently filed several sur-replies.  ECF Nos. 59-60, 62-64.  Because Defendants'
    replies do not include new evidence or argument, sur-replies are unwarranted.  *See Provenz v.*
27  *Miller*, 102 F.3d 1478, 1493 (9th Cir. 1996) ("[W]here new evidence is presented in a reply to a
    motion for summary judgment, the district court should not consider the new evidence without
28  giving the [non-]movant an opportunity to respond.") (quotation omitted).  They are stricken from
    the record.

                                                    9

On a Rule 12(b)(6) motion, the court may consider all materials incorporated into the complaint by reference, as well as evidence properly subject to judicial notice. *Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 617-18 (9th Cir. 2022). "Ultimately, dismissal is proper under Rule 12(b)(6) if it appears beyond doubt that the non-movant can prove no set of facts to support its claims." *Boquist*, 32 F.4th at 773–74 (internal citation and quotation marks omitted) (cleaned up).

A pro se plaintiff's factual allegations are interpreted liberally on a 12(b)(6) motion, and the court must apply a less stringent pleading standard than if the plaintiff was represented by counsel. *Haines v. Kerner,* 404 U.S. 519, 520 (1972). However, the court may dismiss for failure to state a claim when the allegations of the complaint and judicially noticeable materials establish an affirmative defense or other bar to recovery, such as the expiration of the statute of limitations. *See Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013) (quoting *Jones v. Bock*, 549 U.S. 199, 215 (2007)); *see also Goddard v. Google Inc.*, 640 F. Supp. 2d 1193, 1199, n. 5 (N.D. Cal. 2009) (noting that "affirmative defenses routinely serve as a basis for granting Rule 12(b)(6) motions where the defense is apparent from the face of the [c]omplaint"). Dismissal under Rule 12(b)(6) is improper if the allegations of the complaint and judicially noticeable materials concerning the defense raise disputed issues of fact. *ASARCO, LLC v. Union Pacific R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014) (citing *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984) (per curiam)).

"[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (quoting *In re Doe*, 58 F.3d 494, 497 (9th Cir. 1995)). A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies could not be cured by amendment. *See Akhtar v. Mesa*, 698 F.3d 1202, 1213 (9th Cir. 2012).

## ANALYSIS

### I.    Smith's Standing

The "irreducible constitutional minimum of standing" involves three essential elements.

10

1  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  First, there must be "an injury in fact --

2  an invasion of a legally protected interest which is (a) concrete and particularized[…] and (b) actual

3  or imminent, not conjectural or hypothetical[.]"  *Id.*  Second, the injury and defendant's conduct

4  must share "a causal connection" such that the injury is "trace[able] to the challenged action of the

5  defendant[.]"  *Id.* (citation omitted).  Finally, it must be "'likely'" rather than "'speculative'" that a

6  favorable decision would redress the injury.  *Id.* at 561.

7      As an initial matter, County Defendants argue that Smith fails to identify any injury

8  inflicted upon her beyond the arrest, prosecution, and sentencing of her son, Deary-Smith.  ECF

9  No. 22-1 at 5.  A plaintiff generally cannot assert a right that properly belongs to a third party

10  rather than the plaintiff themselves.  *Mills v. U.S.*, 742 F.3d 400, 407 (9th Cir. 2014).  A plaintiff

11  can only assert the rights of a third-party through civil action when (1) the plaintiff has a close

12  relationship with the third-party and (2) some hindrance prevents the third-party's ability to

13  protect his own interest.  *Id.*  That Deary-Smith is also a plaintiff in this case demonstrates that he

14  is not prevented from asserting his own rights.  Smith must present sufficient facts to allege a

15  harm inflicted upon her rather than on her son.

16      In her opposition brief, Smith broadly asserts that Phillips targeted and slandered her

17  "before and after he had Plaintiff Deary-Smith false arrested."  ECF No. 55 at 4.  She asserts that

18  Phillips and Savage targeted her maliciously, made threats and false accusations, defamed her

19  character, falsely accused her of fleeing from a hospital, harassed her and made her afraid,

20  intentionally inflicted emotional distress, and caused her to lose income, friends, her reputation,

21  and her home.  *Id.* at 5.  All of these allegations are either vague or conclusory.  A complaint,

22  however, must provide sufficient factual allegations to "raise a right to relief above the

23  speculative level[.]"  *Twombly*, 550 U.S. at 556.  Smith has provided a list of conclusory

24  allegations as to the type of harm suffered, without any details as to what conduct led to that harm

25  or when it occurred.

26      Smith has failed to plead sufficient facts to demonstrate that she has standing in this

27  action.  Any causes of action should be dismissed as they relate to her.

28  ////

1    **II.    *Heck* Bar**

2        A civil action based on a wrongful conviction, or for any harm where the unlawfulness of

3    the conduct would render the conviction or sentence invalid, can only be brought after "the

4    conviction or sentence has been reversed on direct appeal, expunged by executive order, declared

5    invalid by a state tribunal authorized to make such determination, or called into question by a

6    federal court's issuance of a writ of habeas corpus[.]"  *Heck v. Humphrey*, 512 U.S. 477, 486-87

7    (1994).  When determining if this bar applies to a claim under 42 U.S.C. § 1983, "the relevant

8    question is whether success in a subsequent § 1983 suit would 'necessarily imply' or

9    'demonstrate' the invalidity of the earlier conviction or sentence[.]"  *Smith v. City of Hemet*, 394

10   F.3d 689, 695 (9th Cir. 2005) (en banc) (quoting *Heck*, 512 U.S. at 487).

11       All four groups of causes of actions in the FAC rely on § 1983.  ECF No. 10 at 23, 25-27.

12   Most of the conduct at issue concerns Deary-Smith's arrest, prosecution, conviction, and

13   imprisonment.  Plaintiffs argue that *Heck* does not preclude suit because Deary-Smith was never

14   lawfully convicted.  ECF No. 55 at 5.  Plaintiffs assert that all charges against Deary-Smith were

15   dismissed on January 15, 2015.  ECF No. 55 at 5 (citing ECF No. 10 at 65-67).  Judge Savage

16   therefore abused his power when sentencing Deary-Smith based on those charges.  ECF No. 55 at

17   5-6 (citing ECF No. 10 at 149-150).  Plaintiffs further argue that on April 3, 2019, the appellate

18   court reversed the convictions on three of the charges, as well as the enhancement to one such

19   count.  ECF No. 55 at 6 (citing ECF No. 10 at 209).

20       Although the FAC itself alleges the charges against Deary-Smith were vacated (*see, e.g.*,

21   ECF No. 10 at 15), the exhibits thereto and judicially noticeable documents show this was not

22   entirely the case.  The January 2015 Holding Order only dismissed certain enhancements to the

23   five charges brought against Deary-Smith, not the charges themselves.  ECF No. 10 at 65-67.

24   After Deary-Smith was convicted of all five charges at trial, the April 2019 appellate decision

25   reversed the convictions for attempted robbery but remanded the undisturbed convictions for

26   resentencing.  ECF Nos. 10 at 209, 22-3 at 5, 8.  The final appellate decision in June 2022

27   remanded for further proceedings only on the conviction for attempted murder.  ECF No. 10 at

28   33-37.

1    At the final resentencing, the trial court vacated the attempted murder conviction and

2  firearm enhancement thereto.  Status Report at 1-3, *Deary-Smith*, Case No. 2:20-cv-00572-KJM-

3  AC (ECF Nos. 38, 38-1 at 1).  But Deary-Smith still had convictions from the same underlying

4  incident for burglary under Penal Code § 459 and for possession of a firearm as a previously

5  convicted felon.  *Id.* at 2-3.  He was only released from prison because he had served more than

6  the resentenced term of eight years by then.  *Id.*

7    As of Deary-Smith's release, and to date, Deary-Smith remains convicted of burglary and

8  illegal possession of a firearm.  Any § 1983 action challenging these convictions is *Heck* barred.

9  Plaintiffs cannot claim, for example, that Deary-Smith's conviction under Penal Code § 459

10  should have been under Penal Code § 496.  *See* ECF No. 10 at 8, 55, 179.

11    Nor do Plaintiffs cite any authority for assigning specific prosecutorial conduct to specific

12  criminal charges when they are all part of the same criminal proceeding.  Ninth Circuit precedent

13  mandates a more expansive interpretation of *Heck*.  In *Beets v. County of Los Angeles*, the Ninth

14  Circuit considered whether the *Heck* bar applies to plaintiffs other than the criminal defendants

15  who were tried and convicted in the disputed proceedings.  669 F.3d 1038, 1045-46 (9th Cir.

16  2012).  It ruled that it does apply were the question was whether the civil proceeding challenges

17  "'a criminal conviction,' not 'the plaintiff's' criminal conviction."  *Id.* at 1046 (citation omitted).

18  By the same logic, *Heck* bars a civil action that challenges prosecutorial conduct as to a vacated

19  conviction if the same conduct and proceedings led to other convictions that were never reversed

20  or expunged.  *See also Miller v. Meinhard-Commercial Corp.*, 462 F.2d 358, 360 (5th Cir. 1972)

21  ("Even though an action has an independent purpose and contemplates some other relief, it is a

22  collateral attack if it must in some fashion overrule a previous judgment.").

23    Any cause of action based on Deary-Smith's arrest, prosecution, conviction, and

24  sentencing should be dismissed.

25  **III.    Statute of Limitations**

26    As discussed above, all four groups of causes of actions in the FAC rely on § 1983.  ECF

27  No. 10 at 23, 25-27.   Section 1983 actions "borrow the state statute of limitations that applies to

28  personal injury actions."  *McDougal v. County of Imperial*, 942 F.2d 668, 672 (9th Cir. 1991)

13

1   (citing *Wilson v. Garcia*, 471 U.S. 261, 279-80 (1985)).  In California, the statute of limitations

2   for most types of personal injury actions is two years.  Cal. Code Civ. Proc. § 335.1.[7]  If the cause

3   of action first accrues while the plaintiff is imprisoned on a criminal charge, California tolls the

4   statute of limitations for the lesser of two years or the duration of plaintiff's imprisonment.  Cal.

5   Code Civ. Proc. § 352.1(a).

6          Plaintiffs categorically argue that because Deary-Smith did not know he had any claim

7   until September 2023, the statute of limitations had not lapsed for any such claim by the time he

8   filed this action in August 2024.  ECF Nos. 1, 55 at 9.  But the conduct alleged in the FAC

9   occurred much earlier, as explained below.

10         A.  Conduct Involved in Criminal Convictions

11         The limitations period begins to run from the date on which there is a "complete and

12  present cause of action."  *Bay Area Laundry and Dry-Cleaning Pension Trust Fund v. Ferbar*

13  *Corp. of Cal.*, 522 U.S. 192, 201 (1997) (quoting *Rawlings v. Ray*, 312 U.S. 96, 98 (1941)).  As

14  County Defendants note, a cause of action based on an unlawful conviction accrues from the date

15  that the corresponding sentence is invalidated.  ECF No. 22-1 at 8 (citing *Rosales-Martinez v.*

16  *Palmer*, 753 F.3d 890, 895 (9th Cir. 2014)).

17         For the two attempted robbery convictions that were overturned in *Deary-Smith III* in

18  April 2019 (ECF No. 22-3 at 5, 8), the two-year statute of limitations for any causes of action

19  thereunder lapsed on April 3, 2021.  Even after tolling the statute of limitations for two years due

20  to Plaintiff's incarceration, it expired on April 3, 2023.  Because Plaintiff filed this action on

21  August 21, 2024 (ECF No. 1), any claim based on the prosecution of these offenses is untimely.

22         County Defendants then argue that for any convictions that have not been overturned, the

23  limitations period for claims thereunder began in November 2015, upon Deary-Smith's

24  conviction.  ECF No. 22-1.  County Defendants do not, and cannot, reconcile this with the fact

25  that the there is not a "complete and present cause of action" until the conviction has been

26  invalidated and *Heck* therefore no longer precludes relief.  *See Bay Area Laundry*, 522 U.S. at

27  ////

28  _____

[7]  County Defendants miscite this as California Code Civ. Proc. § 335.10.  ECF No. 22-1 at 7.

14

1    201.  Any claim based on an outstanding conviction should be dismissed as unripe rather than as

2    untimely.

3         The only conviction that was vacated in September 2023 as Plaintiffs allege, and therefore

4    could cause any claims to accrue from that date, was Deary-Smith's conviction for attempted

5    murder.  *See* Status Report at 1-3, *Deary-Smith*, Case No. 2:20-cv-00572-KJM-AC (ECF Nos. 38,

6    38-1 at 1).  Because the statute of limitations for this would not pass until September 2025, even

7    without tolling, any claim based on the prosecution of this charge would be timely.  As discussed

8    above, however, Plaintiffs fail to demonstrate that the Court should distinguish between

9    overturned and upheld convictions in the same proceedings when applying *Heck*.  *See supra* II.

10        The statute of limitations precludes any claim based on misconduct that occurred during

11   Deary-Smith's criminal prosecution.

12        B.  <u>Miscellaneous Conduct</u>

13        Plaintiffs may argue that not all the conduct alleged in the FAC directly relates to a

14   criminal prosecution.  The FAC alleges, for example, that Phillips conspired to harass anyone

15   who publicly opposed "Law Enforcement Accountability," including Plaintiffs.  ECF No. 10 at 4-

16   5, 37.  The FAC further alleges that since Deary-Smith's conviction in 2015, Phillips had him

17   falsely classified as a sex offender in all three prisons where he served parts of his sentence.  *Id.* at

18   17, 26.

19        As discussed above, because Plaintiffs allege all causes of action under § 1983, the statute

20   of limitations for any such action is two years.  *See supra* III; California Code Civ. Proc. § 335.1;

21   *McDougal*, 942 F.2d at 672.  When combined with the maximum two-year tolling for

22   imprisonment, the statute of limitations for any such action is no greater than four years.  *See*

23   *supra* III; Cal. Code Civ. Proc. § 352.1(a).

24        As to misidentifying Deary-Smith as a sex offender throughout his incarceration, such a

25   cause of action would accrue from when this misidentification first occurred.  Here, a February

26   2016 report asserted that Deary-Smith had been arrested for raping a disabled individual.  *Id.* at

27   203.  Even after tolling, any § 1983 claim based on this conduct was therefore untimely after

28   February 2020.

1    As to Phillips' harassment of the Smith family, the FAC fails to allege any specific

2    conduct beyond Deary-Smith's arrest, conviction, and incarceration.  In her opposition brief,

3    Smith broadly asserts that Phillips targeted and slandered her "before and after he had Plaintiff

4    Deary-Smith false arrested."  ECF No. 55 at 4.  As discussed above, however, Plaintiffs' failure

5    to detail any specific instances of defamation renders the pleadings insufficient as to any such

6    claim.  *See supra* I; *Twombly*, 550 U.S. at 556.  It also leaves the Court unable to determine if any

7    claims based thereon would be timely.

8         C.   Conclusion

9    The statute of limitations for § 1983 claims bars any action based on the conduct alleged

10   in the FAC.[8]

11   **IV.   Immunities and Liabilities**

12        A.   Prosecutorial Immunity

13   A district attorney enjoys absolute immunity from § 1983 actions for conduct taken in

14   pursuit of criminal prosecution, insofar as the district attorney is acting within his role as an

15   "advocate for the State" and taking actions that are "intimately associated with the judicial phase

16   of the criminal process." *Cousins v. Lockyer*, 568 F.3d 1063, 1068 (9th Cir. 2009) (citing *Imbler*

17   *v. Pachtman*, 424 U.S. 409, 410, 430-31 (1976)).  In contrast, only qualified immunity applies to

18   the district attorney's investigative or administrative actions, actions that are not taken as "as an

19   officer of the court[.]"  *Cousins*, 568 F.3d at 1068 (citations omitted).

20   The D.A. Defendants argue that they enjoy absolute immunity from this action because all

21   relevant conduct was part of their prosecution of Deary-Smith.  ECF No. 22-1 at 7.  The Court

22   agrees that Plaintiffs have failed to plead sufficient facts as to any conduct not related to the

23   criminal proceedings.  *See supra* I, III.2; *Twombly*, 550 U.S. at 556.

24   Plaintiffs respond that prosecutorial immunity does not apply because the D.A.

25

26   [8]  Plaintiff Deary-Smith cannot claim that he did not know about the possibility of coming to
     federal court to seek to address his complaints, as he—with Plaintiff Smith's apparent
27   assistance—filed three actions challenging aspects of his arrest and criminal proceedings in 2014
     and a petition for writ of habeas corpus in 2020.  *See* Case Nos. 2:14-cv-2781, 2:14-cv-2782;
28   2:14-cv-2783; 2:20-cv-572.

16

1    Defendants "acted with deliberate indifference to [Deary-Smith's] constitutional rights, and

2    [were] aware of the risk of false imprisonments." ECF No. 57 at 7-8. But courts have not

3    recognized a deliberate indifference exception to prosecutorial immunity. Any such exception

4    would be at odds with binding precedent holding that, "[t]he intent of the prosecutor when

5    performing prosecutorial acts plays no role in the immunity inquiry." *McCarthy v. Mayo*, 827

6    F.2d 1310, 1315 (9th Cir. 1987). Under this precedent, absolute immunity applies even if it

7    "'leave[s] the genuinely wronged defendant without civil redress against a prosecutor whose

8    malicious or dishonest action deprives him of liberty.'" *Genzler v. Longanbach*, 410 F.3d 630,

9    637 (9th Cir. 2005) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 432 (1976)). If intentional

10   misconduct fails to pierce prosecutorial immunity, deliberate indifference necessarily does as

11   well.

12       The D.A. Defendants enjoy absolute immunity from any conduct related to Deary-Smith's

13   arrest, conviction, or incarceration.

14       B.  Judicial Immunity

15       Judges are entitled to absolute immunity from actions for damages based on acts related to

16   the "judicial process." *In re Castillo*, 297 F.3d 940, 947 (9th Cir. 2001). This includes

17   allegations "that such action was driven by malicious or corrupt motives" or that "the exercise of

18   judicial authority is 'flawed by the commission of grave procedural errors.'" *Id.* (citations

19   omitted); *see also Lund v. Cowan*, 5 F.4th 964, 972 (9th Cir. 2021) ("a judicial act does not stop

20   being a judicial act even if the judge acted with 'malice or corruption of motive'") (citation

21   omitted). "If judicial immunity means anything," it cannot depend on whether a specific act was

22   "in error" or exceeded the bounds of a judge's authority. *Mireles v. Waco*, 502 U.S. 9, 12-13

23   (1991). Rather, "the relevant inquiry is the 'nature' and 'function' of the action, not the 'act

24   itself.'" *Id.* at 13 (quoting *Stump v. Sparkman*, 435 U.S. 349, 362 (1978)). The Ninth Circuit has

25   noted that although judicial independence can result in unfairness to a litigant, that is precisely

26   when "judicial immunity may be more necessary to preserve judicial independence." *Lund*, 5

27   F.4th at 971-72.

28       The FAC alleges that Judge Savage convicted Deary-Smith using unsigned jury forms,

1    and that he improperly asserted at the sentencing hearing that Deary-Smith had previous

2    convictions. *Id.* at 8, 14, 108-09, 170-74. As Judge Savage notes, these allegations all relate to

3    his duties as the judge presiding over Deary-Smith's criminal proceedings. ECF No. 28-1 at 8.

4        Smith argues, without citing authority, that judicial immunity does not apply to criminal

5    liability for fraud, corruption, or accepting bribes. ECF No. 48 at 3. Because this is a civil action,

6    Smith's argument has no relevance. The Supreme Court has held that allegations of bad faith or

7    malice, including fraud, cannot supersede judicial immunity because it "is an immunity from suit,

8    not just from ultimate assessment of damages." *Mireles*, 502 U.S. at 11.[9]

9        Judge Savage enjoys judicial immunity from this action.

10        C. Quasi-Judicial Immunity

11        Court clerks and other non-judicial court employees have "absolute quasi-judicial

12    immunity" from damages in civil rights violations when performing tasks that are an integral part

13    of the judicial process. *Mullis v. U.S. Bankruptcy Court*, 828 F.2d 1385, 1390 (9th Cir. 1987);

14    *Moore v. Brewster*, 96 F.3d 1240, 1244 (9th Cir. 1996). This includes the management of a

15    court's own docket. *In re Castillo*, 297 F.3d at 951.

16        Derrico asserts that the only allegations in the FAC against her – that she split a case

17    across two hearing dates and remanded Deary-Smith back to the Sacramento Sheriff's

18    Department – are integral functions protected by quasi-judicial immunity as Judge Savage's clerk.

19    ECF No. 28-1 at 9. Smith argues that this immunity does not apply when actions are

20    "intentionally wrong, malicious, or corrupt," but does not cite authority for this proposition. ECF

21    No. 48 at 4. As with Judge Savage, whether Derrico erred or acted in bad faith when executing

22    her duties does not abrogate quasi-judicial immunity for an otherwise protected act. *See supra*

23    IV.2; *see also Mullis,* 828 F.2d at 1390 ("a mistake or an act in excess of jurisdiction does not

24    abrogate judicial immunity, even if it results in 'grave procedural errors'").

25        Derrico enjoys quasi-judicial immunity from this action.

26

27    _____

[9] Smith then cites *Stradford v. Judge Vasta* to argue that Judge Savage violated Deary-Smith's

28    rights under multiple Constitutional Amendments. ECF No. 48 at 4. Plaintiff fails to provide a
     citation for this case, and the Court could not locate it.

1    D.  <u>General Eleventh Amendment Immunity</u>

2    A state official sued in his official capacity has the same immunity as the state from suit in

3    federal court under the Eleventh Amendment.  *Pena v. Gardner*, 976 F.2d 469, 473 (9th Cir.

4    1992).  Separate from any specific form of immunity, the County Defendants, Judge Savage, and

5    the CDCR argue that every allegation in the FAC concerns actions the Defendants took in their

6    capacities as County employees and state officials.  ECF Nos. 22-1 at 6-7, 26 at 3-4, 28-1 at 9-10.

7    Plaintiffs purportedly quote *Dragna v. White* to argue that a "lawsuit against a state

8    official acting under color of state law to violate federal rights is not protected by the Eleventh

9    Amendment."  ECF No. 57 at 8.  None of the three cases with that name discuss the Eleventh

10   Amendment.  *See generally Dragna v. White*, 45 Cal. 2d 469 (Cal. 1955); *Dragna v. White*, 280

11   P.2d 817 (Cal. Ct. App. 1955); *Dragna v. White*, 281 P.2d 566 (Cal. Ct. App. 1955).  Regardless,

12   the Ninth Circuit has explicitly held that Eleventh Amendment immunity limits what § 1983

13   claims a plaintiff can bring against a state official acting under color of law.  *See Doe v. Lawrence*

14   *Livermore Nat'l Lab'y*, 131 F.3d 836, 839 (9th Cir. 1997).

15   As to Judge Savage, Plaintiffs argue that Eleventh Amendment Immunity does not apply

16   because he "maliciously and corruptly violated" various constitutional rights.  ECF No. 48 at 5.

17   As with judicial immunity, Plaintiffs cite no authority to show that the type of harm alleged can

18   affect whether a state actor enjoys immunity under the Eleventh Amendment.  Plaintiffs similarly

19   fail to cite authority for the assertion that the Eleventh Amendment does not preclude civil actions

20   against state officials, like the CDCR, for violating federal law.  *See* ECF No. 47 at 2.

21   Plaintiffs then assert that Derrico cannot assert Eleventh Amendment immunity because

22   court clerks are not considered an "arm of the state[.]"  *Id.* at 4-5.  Plaintiffs cite no authority for

23   such a constrained definition of a state official.  As Savage and Derrico note, the allegations in the

24   FAC concerns Derrico's performance of acts integral to her duties as a courtroom clerk in a state

25   court.  ECF No. 52 at 5.  This suffices to demonstrate that the Eleventh Amendment bars any civil

26   action against her based on such conduct.

27   Plaintiffs claims against Savage and Derrico in their official capacities and the CDCR are

28   barred by the Eleventh Amendment.

19

1          E.  <u>The City's Liability</u>

2          The City argues that because every individual in the action is either a County official or a

3  member of the judiciary, as discussed above, Plaintiffs have failed to articulate what injury the

4  City or its employees have inflicted.  ECF No. 21-1 at 3.  The only connection attached to the

5  FAC is a Sacramento Police Department Report that Smith filed in June 2021, alleging false

6  imprisonment based on Deary-Smith's arrest in February 2013.  *Id.* (citing ECF No. 10 at 219-

7  226).  Plaintiffs assert in their opposition briefs that City can be sued for false arrest and false

8  imprisonment.  As discussed above, however, the FAC alleges that that County Sheriff's

9  Department, not the City's Police Department, arrested Deary-Smith in January 2013 and

10  processed him the following month.  ECF No. 10 at 3, 10-11, 93.  The City's inability to

11  intervene when Smith filed a complaint years later does not provide a basis for relief.

12          At the hearing on these motions, Plaintiffs also asserted that the Sacramento Police

13  Department, not the Sacramento County Sheriff's Department, generated the report that Phillips

14  used to obtain a warrant for Deary-Smith's arrest and extradition from Texas.  But this is just

15  another version of a claim that Deary-Smith's arrest was unlawful, a claim that is *Heck* barred in

16  this action.  *See Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir.1996) (per curiam) ("There is no

17  question that Heck bars Smithart's claims that defendants lacked probable cause to arrest him and

18  brought unfounded criminal charges against him.").

19          Because Plaintiffs have failed to plead sufficient facts as to any injury by the City, all

20  claims against it should be dismissed.

21  **V.    Conclusion**

22          Any claim based on events relating to Deary-Smith's criminal prosecution are barred

23  under *Heck*, and any ripe § 1983 claim is untimely.  Even if Plaintiffs' claims were not *Heck*

24  barred and untimely, they are largely precluded by Eleventh Amendment, prosecutorial, and

25  judicial immunities.  Moreover, Smith has no standing independent of Deary-Smith and neither

26  Plaintiff has alleged a harm caused by the City.  The Court therefore recommends GRANTING

27  all four motions to collectively dismiss all causes of action against all Defendants.

28          A pro se litigant is entitled to notice of the deficiencies in the complaint and an

20

1   opportunity to amend, unless the complaint's deficiencies could not be cured by amendment.  *See*

2   *Akhtar*, 698 F.3d at 1213.  At the June 5 hearing, the Court engaged in a lengthy series of

3   inquiries to determine if Plaintiffs could assert additional facts against Defendants that might cure

4   any of the deficiencies identified above.  None of the information Plaintiffs shared in response to

5   these inquiries would materially address those deficiencies.  Plaintiffs' claims against all

6   Defendants are precluded as a matter of law, and Plaintiffs have not show that they can cure such

7   defects.  Leave to amend should be DENIED.

8                                    **CONCLUSION**

9           Accordingly, **IT IS HEREBY RECOMMENDED THAT**:

10      1.  Defendant City's Motion to Dismiss (ECF No. 21) be GRANTED as to all causes of

11          action WITHOUT LEAVE TO AMEND;

12      2.  County Defendants' Motion to Dismiss (ECF Nos. 22, 24) be GRANTED as to all

13          causes of action WITHOUT LEAVE TO AMEND;

14      3.  Defendant CDCR's Motion to Dismiss (ECF No. 26) be GRANTED as to all causes

15          of action WITHOUT LEAVE TO AMEND; and

16      4.  Defendant Judge Savage and Defendant Derrico's Motion to Dismiss (ECF No. 28) be

17          GRANTED as to all causes of action WITHOUT LEAVE TO AMEND.

18          These findings and recommendations are submitted to the United States District Judge

19  assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14)

20  days after being served with these findings and recommendations, Plaintiff may file written

21  objections with the court.  Such document should be captioned "Objections to Magistrate Judge's

22  Findings and Recommendations."  Local Rule 304(d).  Plaintiff is advised that failure to file

23  objections within the specified time may waive the right to appeal the District Court's order.

24  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

25          **SO ORDERED**.

26  DATED: July 1, 2025

27                                                     _____
                                                       SEAN C. RIORDAN
28                                                     UNITED STATES MAGISTRATE JUDGE

                                    21